UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALINDA ALSHOUBAKI,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. EDCV 12-00296 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　　Plaintiff Rosalinda Alshoubaki filed this action on March 13, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on March 22 and 28, 2012. (Dkt. Nos. 7, 11.) On November 19, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　　　Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for consideration of Dr. Sisson's opinions.

**I.**

## PROCEDURAL BACKGROUND

On March 23, 2009, Alshoubaki filed an application for supplemental security income alleging an onset date of February 22, 2008.[1]  AR 10, 141-47. The application was denied initially and upon reconsideration.  AR 10, 67-68. Alshoubaki requested a hearing before an Administrative Law Judge ("ALJ").  On August 25, 2010, the ALJ conducted a hearing at which Alshoubaki and a vocational expert ("VE") testified.  AR 23-63.  On November 5, 2010, the ALJ issued a decision denying benefits.  AR 10-18.  On January 19, 2012, the Appeals Council denied the request for review.  AR 1-3.  This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada,* 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the

---

[1] Alshoubaki filed a prior application for supplemental security income on September 29, 2005, alleging an onset date of February 21, 2002.  Administrative Record ("AR") 17, 72.  The 2005 application resulted in an unfavorable decision, dated February 21, 2008.  Alshoubaki was found capable of performing a range of light work.  AR 17, 72-79.

evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A.  Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  The ALJ's Findings

The ALJ found that Alshoubaki has the severe impairments of diabetes mellitus, carpal tunnel syndrome, obesity, diabetic neuropathy, and depression. AR 12.  She has the residual functional capacity ("RFC") to perform a range of light work.  AR 13.  She can lift 10 pounds frequently and 20 pounds occasionally. She can sit, stand and walk 6 hours in an 8 hour workday, but must be able to alternate positions at 30 minute intervals for 1-3 minutes at a time.  She can occasionally climb stairs/ramps; never climb ropes, ladders or scaffolds; occasionally kneel, crouch, stoop, and bend at the waist; occasionally use her upper extremities for reaching overhead; and frequently perform gross manipulations bilaterally.  She must avoid exposure to hazards, such as unprotected heights and dangerous moving machinery, and concentrated exposure to pulmonary irritants, such as dust, fumes, and odors.  She can have frequent contact with co-workers and the general public, make simple work related decisions, and deal with routine changes in the work setting.  She is limited to simple routine repetitive tasks.  *Id.*  Although Alshoubaki cannot perform any past relevant work, there are jobs that exist in significant numbers in the

3

national economy that she can perform such as furniture rental consultant, mail clerk and sewing machine operator.  AR 17-18.

### C. Treating Physician

Alshoubaki contends that the ALJ did not properly consider the opinion of Dr. Sisson, her treating physician.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Sisson completed a Work Capacity Evaluation (Mental) and an Ability To Do Work-Related Activities (Physical) assessment on March 1, 2010.  AR 425-26, 428-30.  Regarding Alshoubaki's mental limitations, Dr. Sisson opined that Alshoubaki had moderate limitations in her ability to maintain attention and concentration for extended periods, but otherwise had mild or no limitations in the remaining functional areas.[2]  AR 425-26.  Dr. Sisson opined that Alshoubaki would be absent from work three days or more per month due to her

---

[2] Dr. Sisson could not assess Alshoubaki's ability to accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and set realistic goals or make plans independently of others.  AR 425-26.

impairments. AR 426. Regarding Alshoubaki's physical limitations, Dr. Sisson opined that Alshoubaki can lift 10 pounds frequently and 20 pounds occasionally, and can sit, stand and walk for 3 hours per day. AR 428. She can sit for 60 minutes before changing position, and stand for 30 minutes before changing position. *Id.* She must walk around every 30 minutes for 20 minutes at a time. AR 429. She must be able to shift at will from sitting or standing/walking. *Id.* She will need to lie down every 4-6 hours. *Id.* Dr. Sisson stated that his findings of "moderate, persistent, recurrent, low back pain" support Alshoubaki's limitations. *Id.* Dr. Sisson also found that Alshoubaki can occasionally twist, stoop (bend), crouch and climb stairs. *Id.* She can never climb ladders. *Id.* Her handling, fingering and pushing/pulling are affected by her impairments because of "numbness and tingling sensation on fingers of both hands" due to "low back pain." *Id.* She must avoid concentrated exposure to extreme heat, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights, and avoid even moderate exposure to extreme cold, wetness and humidity because these environmental factors "[m]ay increase low back pain and exacerbate lung disease." AR 430. She would be absent from work more than three times a month due to her impairments. *Id.*

The ALJ gave Dr. Sisson's opinions "limited weight." AR 15. "These limitations are unsupported by the claimant's records." *Id.* "There is no evidence that Dr. Sisson examined the claimant or what if any records were reviewed. . . . It is unknown whether he examined the claimant, for what duration, or what tests were performed in order to generate his opinions."[3] *Id.* The ALJ gave "great weight" to the opinions of the consultative examiners, Dr. Larson and Dr. Fabella,

---

[3] A treating physician's opinion regarding the mental functioning of a patient constitutes competent psychiatric evidence. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (if treating physician provided treatment for claimant's psychiatric impairment, his opinion constitutes "competent psychiatric evidence"). Dr. Sisson prescribed psychotropic medication for Alshoubaki's mental impairment. *See, e.g.,* AR 364, 376.

5

who examined Alshoubaki and assessed mild mental limitations and an ability to perform a range of light work, respectively. AR 15-16, 244-55; *see also Orn*, 495 F.3d at 632 (stating an examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings). The ALJ concluded that the "objective and credible evidence does not support a finding that the claimant has greater work restrictions than" the ALJ's RFC assessment. AR 15.

Alshoubaki argues that the ALJ did not address the medical records from Baseline Medical Clinic, where Dr. Sisson treated her. The Commissioner concedes that the ALJ was "mistaken in stating that there was no evidence that Dr. Sisson reviewed notes or examined [Alshoubaki]." JS 14-15. However, the Commissioner argues the error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

The ALJ cited the Baseline Medical Clinic records and apparently did not realize that Dr. Sisson was affiliated with that entity. The ALJ concluded that these records "do not establish an inability to perform work activity for any twelve month period of time." AR 15, 231-43, 280-82, 361-94. The treatment records indicate Dr. Sisson saw Alshoubaki four times in 2008, with no complaints of back pain. AR 232-35. Dr. Sisson saw Alshoubaki several times in 2009 for medication refills, pain in hands and depression. AR 231, 280, 378. She complained of back pain in August 2009. AR 280. Alshoubaki saw Dr. Sisson five times between February and June 2010 for a bump on her left back side, refills, leg length discrepancy, pain in hands, swollen feet, water retention, and "paper work." AR 361, 363, 364, 372, 376, 378. She complained of back pain in February 2010. AR 372. Dr. Sisson recommended scheduling a sleep study, lumbar spine x-rays, chest x-rays, a bilateral lower extremity scanogram, and laboratory work, and prescribed bilateral wrist braces. AR 361, 363, 364, 372-75, 378.

In making her assessment, however, the ALJ specifically cited Alshoubaki's February 15, 2010 lumbar x-ray (ordered by Dr. Sisson), which indicated degenerative changes in the lumbar spine, moderate disc space narrowing with large anterolateral spurring at L1-2, large anterolateral spurring at T12-L1 without significant disc space narrowing, and mild anterolateral spurring without disc space narrowing at L3-4 and L2-3.  AR 15, 373.  The ALJ noted that Alshoubaki's doctors placed no work restrictions on her before or after the 2010 lumbar x-ray.[4]  AR 15, 42.  However, Dr. Sisson's Ability To Do Work-Related Activities (Physical) assessment is dated March 1, 2010, two weeks later.  Given that the failure of a treating physician to impose work restrictions was a reason the ALJ gave for rejecting Dr. Sisson's limitations, this court cannot assume that the ALJ's mistake in not recognizing Dr. Sisson as a treating physician at the Baseline Medical Clinic was harmless.

Accordingly, this matter must be remanded for evaluation of Dr. Sisson's limitations.

### D.  Step Five of the Sequential Analysis

Alshoubaki contends that the three jobs identified by the VE – furniture rental consultant, mail clerk and sewing machine operator – are inconsistent with her limitations.

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits.  If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits.  *Id.*

---

[4] The remaining treatment records from 2000-06 are of limited relevance. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2007); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

"[A]n ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]."[5] *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009). Social Security Ruling ("SSR") 00-4p requires the ALJ to "first determine whether a conflict exists" between the DOT and the vocational expert's testimony, and "then determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]."[6] *Massachi*, 486 F.3d at 1153.

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The ALJ's explanation is satisfactory if the ALJ's factual findings support a deviation from the DOT and "persuasive testimony of available job categories" matches "the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id.* at 1435. Remand may not be necessary if the procedural error is harmless, *i.e.*, when there is no conflict or if the VE provided sufficient support for her conclusion to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n.19.

---

[5] The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

[6] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

Under the DOT, the General Educational Development ("GED") Scale measures "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C, Section III, 1991 WL 688702 (1991). The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. *Id.* Reasoning Development Level 3 requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id.*

The ALJ's RFC determination limits Alshoubaki to "simple routine repetitive tasks." AR 13. Alshoubaki argues that the jobs of furniture rental consultant and mail clerk would require her to do more than simple, repetitive tasks because they require Reasoning Level 3 skills. JS 19-22; *see* DOT 295.357-018, DOT 209.687-026.

The court has not located a published decision by the Ninth Circuit on the issue of whether someone limited to simple, repetitive work can perform jobs requiring Level 3 reasoning.[7] Some district courts in this circuit have generally held that a limitation to simple repetitive tasks is inconsistent with jobs requiring Level 3 reasoning. *See, e.g., Espinoza v. Astrue,* 2013 WL 327889, at *3 (C.D. Cal. Jan. 29, 2013); *Grimes v. Astrue*, 2011 WL 164537, at *4 (C.D. Cal. Jan. 18, 2011); *Carney v. Astrue*, 2010 WL 5060488, at *5 (C.D. Cal. Dec. 6, 2010); *Etter v. Astrue*, 2010 WL 4314415, at *3 (C.D. Cal. Oct. 22, 2010); *Bagshaw v. Astrue*, 2010 WL 256544, at *5 (C.D. Cal. Jan. 20, 2010); *Pak v. Astrue*, 2009 WL 2151361, at *7 (C.D. Cal. Jul. 14, 2009); *Tudino v. Barnhart*, 2008 WL 4161443,

---

[7] There is a split among the circuit courts on whether a limitation to simple, repetitive work is compatible with the performance of jobs requiring Level 3 reasoning. *Compare Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) *with Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

9

at *11 (S.D. Cal. Sept. 5, 2008). Other district courts in this circuit have held, however, that simple repetitive tasks are not necessarily inconsistent with Level 3 reasoning. *See, e.g., Dahl v. Astrue*, 2011 WL 2837660, *1 (C.D. Cal. July 18, 2011) (looking to the record to determine whether a claimant can perform the type of work identified by the vocational expert); *Wentz v. Astrue*, 2009 WL 3734104, at *14 (D. Or. Nov. 4, 2009) (same). The Commissioner argues that the GED describes the educational level expected for given jobs and "is not intended as a job description or requirement, or as reflecting the particular mental demands of the jobs listed in the DOT." JS 27.

It is unnecessary to resolve this issue because Alshoubaki can perform the sewing machine operator job identified in the ALJ's decision. Alshoubaki argues that the job would require her to be exposed to hazards such as dangerous moving machinery, which conflicts with the ALJ's RFC determination. JS 23. She contends that as a sewing machine operator, she would be exposed to dangerous moving machinery because she could get her fingers or hand stuck or caught in the machine. JS 24. The Commissioner argues that while the sewing machine operator job "necessarily involves operating a machine, the vocational expert reasonably determined that the machinery involved is not 'dangerous.'" JS 28-29; AR 60-61.

The DOT describes the job of sewing machine operator as follows:
> Tends machine that automatically stitches designs to decorate mattress covers and to hold padding in place: Places spools of thread on spindles and draws ends through guides, tensions, and needle eyes. Inserts bobbin in shuttle and draws thread through slot in shuttle wall. Clamps covering material and padding in frame and places frame in rack under sewing head of machine. Bolts pilot pattern plate on platform beneath frame, using wrench. Places pilot or guide bar extending from frame in guide channels of pilot pattern

        and starts machine. May move pilot or guide bar by hand. May attach framed cover to pulleys that draw it away from machine as cover is stitched, and guide cover under presser foot by hand to stitch design.

DICOT 689.685-118. The DOT further provides that exposure to moving mechanical parts in the job is "not present" in the sewing machine operator job. *Id.* The VE's testimony regarding the sewing machine operator does not conflict with the DOT.

### E. Obesity

Alshoubaki contends that the ALJ did not properly determine the effect of her obesity on her other impairments.[8]

The ALJ determined that her obesity was a severe impairment. AR 12. Alshoubaki argues that her "obesity is compounded by her diabetes, her carpal tunnel syndrome, her diabetic neuropathy, as well as other impairments not listed as severe by the ALJ, including chronic kidney disease, hypertension, and back pain." JS 34. However, Alshoubaki has not pointed to any evidence in the record of any functional limitations as a result of her obesity that the ALJ failed to consider. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005). The court in *Burch* noted an ALJ "'will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.'" *Id.* at 682. (citation omitted). Accordingly, an ALJ evaluates a case "'based on the information in the case record.'" *Id.* (citation and emphasis omitted).

---

[8] Obesity can be considered in combination with other impairments to determine whether, when viewed in the aggregate, the multiple impairments are equivalent to a listed impairment. *See* SSR 02–1p (2002).

11

Moreover, at Step Three, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence in an effort to establish equivalence. *Id.* at 683. As in *Burch*, Alshoubaki was represented by counsel at the hearing. AR 25. Alshoubaki did not make any effort to argue equivalence to a listed impairment. The medical record do not indicate any limitations due to obesity, alone or in combination with other impairments.[9] The ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for consideration of Dr. Sisson's opinions.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 2, 2013

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[9] Dr. Sisson did not mention obesity as a medical finding supporting the limitations in his physical assessment. AR 428-30.