1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11   ROSALINDA ALSHOUBAKI,           )     NO. EDCV 12-00296 AGR
12          Plaintiff,               )
                                     )
13          v.                       )
                                     )
14   CAROLYN W. COLVIN,              )     MEMORANDUM OPINION AND
     Commissioner of Social Security,)     ORDER
15                                   )
16          Defendant.               )
                                     )
17   _____)

18          Plaintiff Rosalinda Alshoubaki filed this action on March 13, 2012.

19   Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the

20   magistrate judge on March 22 and 28, 2012.  (Dkt. Nos. 7, 11.)  On November

21   19, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed

22   issues.  The court has taken the matter under submission without oral argument.

23          Having reviewed the entire file, the court reverses the decision of the

24   Commissioner and remands this matter for consideration of Dr. Sisson's opinions.

25
26
27
28

# I.

## PROCEDURAL BACKGROUND

On March 23, 2009, Alshoubaki filed an application for supplemental security income alleging an onset date of February 22, 2008.[1] AR 10, 141-47. The application was denied initially and upon reconsideration. AR 10, 67-68. Alshoubaki requested a hearing before an Administrative Law Judge ("ALJ"). On August 25, 2010, the ALJ conducted a hearing at which Alshoubaki and a vocational expert ("VE") testified. AR 23-63. On November 5, 2010, the ALJ issued a decision denying benefits. AR 10-18. On January 19, 2012, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the

---

[1] Alshoubaki filed a prior application for supplemental security income on September 29, 2005, alleging an onset date of February 21, 2002. Administrative Record ("AR") 17, 72. The 2005 application resulted in an unfavorable decision, dated February 21, 2008. Alshoubaki was found capable of performing a range of light work. AR 17, 72-79.

1  evidence is susceptible to more than one rational interpretation, the court must
2  defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

3                                            **III.**

4                                   **DISCUSSION**

5          **A.    Disability**

6          A person qualifies as disabled, and thereby eligible for such benefits, "only
7  if his physical or mental impairment or impairments are of such severity that he is
8  not only unable to do his previous work but cannot, considering his age,
9  education, and work experience, engage in any other kind of substantial gainful
10 work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20,
11 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

12         **B.    The ALJ's Findings**

13         The ALJ found that Alshoubaki has the severe impairments of diabetes
14 mellitus, carpal tunnel syndrome, obesity, diabetic neuropathy, and depression.
15 AR 12.  She has the residual functional capacity ("RFC") to perform a range of
16 light work.  AR 13.  She can lift 10 pounds frequently and 20 pounds occasionally.
17 She can sit, stand and walk 6 hours in an 8 hour workday, but must be able to
18 alternate positions at 30 minute intervals for 1-3 minutes at a time.  She can
19 occasionally climb stairs/ramps; never climb ropes, ladders or scaffolds;
20 occasionally kneel, crouch, stoop, and bend at the waist; occasionally use her
21 upper extremities for reaching overhead; and frequently perform gross
22 manipulations bilaterally.  She must avoid exposure to hazards, such as
23 unprotected heights and dangerous moving machinery, and concentrated
24 exposure to pulmonary irritants, such as dust, fumes, and odors.  She can have
25 frequent contact with co-workers and the general public, make simple work
26 related decisions, and deal with routine changes in the work setting.  She is
27 limited to simple routine repetitive tasks.  *Id.*  Although Alshoubaki cannot perform
28 any past relevant work, there are jobs that exist in significant numbers in the

                                            3

national economy that she can perform such as furniture rental consultant, mail clerk and sewing machine operator.  AR 17-18.

## C.  **Treating Physician**

Alshoubaki contends that the ALJ did not properly consider the opinion of Dr. Sisson, her treating physician.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Sisson completed a Work Capacity Evaluation (Mental) and an Ability To Do Work-Related Activities (Physical) assessment on March 1, 2010.  AR 425-26, 428-30.  Regarding Alshoubaki's mental limitations, Dr. Sisson opined that Alshoubaki had moderate limitations in her ability to maintain attention and concentration for extended periods, but otherwise had mild or no limitations in the remaining functional areas.[2]  AR 425-26.  Dr. Sisson opined that Alshoubaki would be absent from work three days or more per month due to her

---

[2]  Dr. Sisson could not assess Alshoubaki's ability to accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and set realistic goals or make plans independently of others.  AR 425-26.

1   impairments.  AR 426.  Regarding Alshoubaki's physical limitations, Dr. Sisson

2   opined that Alshoubaki can lift 10 pounds frequently and 20 pounds occasionally,

3   and can sit, stand and walk for 3 hours per day.  AR 428.  She can sit for 60

4   minutes before changing position, and stand for 30 minutes before changing

5   position.  *Id.*  She must walk around every 30 minutes for 20 minutes at a time.

6   AR 429.  She must be able to shift at will from sitting or standing/walking.  *Id.*

7   She will need to lie down every 4-6 hours.  *Id.*  Dr. Sisson stated that his findings

8   of "moderate, persistent, recurrent, low back pain" support Alshoubaki's

9   limitations.  *Id.*  Dr. Sisson also found that Alshoubaki can occasionally twist,

10  stoop (bend), crouch and climb stairs.  *Id.*  She can never climb ladders.  *Id.*  Her

11  handling, fingering and pushing/pulling are affected by her impairments because

12  of "numbness and tingling sensation on fingers of both hands" due to "low back

13  pain."  *Id.*  She must avoid concentrated exposure to extreme heat, fumes, odors,

14  dusts, gases, poor ventilation, and hazards such as machinery and heights, and

15  avoid even moderate exposure to extreme cold, wetness and humidity because

16  these environmental factors "[m]ay increase low back pain and exacerbate lung

17  disease."  AR 430.  She would be absent from work more than three times a

18  month due to her impairments.  *Id.*

19       The ALJ gave Dr. Sisson's opinions "limited weight."  AR 15.  "These

20  limitations are unsupported by the claimant's records."  *Id.*  "There is no evidence

21  that Dr. Sisson examined the claimant or what if any records were reviewed. . . .

22  It is unknown whether he examined the claimant, for what duration, or what tests

23  were performed in order to generate his opinions."[3]  *Id.*  The ALJ gave "great

24  weight" to the opinions of the consultative examiners, Dr. Larson and Dr. Fabella,

25

26       [3]  A treating physician's opinion regarding the mental functioning of a
    patient constitutes competent psychiatric evidence.  *See Lester v. Chater*, 81
27  F.3d 821, 833 (9th Cir. 1995) (if treating physician provided treatment for
    claimant's psychiatric impairment, his opinion constitutes "competent psychiatric
28  evidence").  Dr. Sisson prescribed psychotropic medication for Alshoubaki's
    mental impairment.  *See, e.g.,* AR 364, 376.

1    who examined Alshoubaki and assessed mild mental limitations and an ability to

2    perform a range of light work, respectively.  AR 15-16, 244-55; *see also Orn*, 495

3    F.3d at 632 (stating an examining physician's opinion constitutes substantial

4    evidence when it is based on independent clinical findings).  The ALJ concluded

5    that the "objective and credible evidence does not support a finding that the

6    claimant has greater work restrictions than" the ALJ's RFC assessment.  AR 15.

7         Alshoubaki argues that the ALJ did not address the medical records from

8    Baseline Medical Clinic, where Dr. Sisson treated her.  The Commissioner

9    concedes that the ALJ was "mistaken in stating that there was no evidence that

10   Dr. Sisson reviewed notes or examined [Alshoubaki]."  JS 14-15.  However, the

11   Commissioner argues the error was harmless.  *See Molina v. Astrue*, 674 F.3d

12   1104, 1115 (9th Cir. 2012).

13        The ALJ cited the Baseline Medical Clinic records and apparently did not

14   realize that Dr. Sisson was affiliated with that entity.  The ALJ concluded that

15   these records "do not establish an inability to perform work activity for any twelve

16   month period of time."  AR 15, 231-43, 280-82, 361-94.  The treatment records

17   indicate Dr. Sisson saw Alshoubaki four times in 2008, with no complaints of back

18   pain.  AR 232-35.  Dr. Sisson saw Alshoubaki several times in 2009 for

19   medication refills, pain in hands and depression.  AR 231, 280, 378.  She

20   complained of back pain in August 2009.  AR 280.  Alshoubaki  saw Dr. Sisson

21   five times between February and June 2010 for a bump on her left back side,

22   refills, leg length discrepancy, pain in hands, swollen feet, water retention, and

23   "paper work."  AR 361, 363, 364, 372, 376, 378.  She complained of back pain in

24   February 2010.  AR 372.   Dr. Sisson recommended scheduling a sleep study,

25   lumbar spine x-rays, chest x-rays, a bilateral lower extremity scanogram, and

26   laboratory work, and prescribed bilateral wrist braces.  AR 361, 363, 364, 372-75,

27   378.

28

In making her assessment, however, the ALJ specifically cited Alshoubaki's February 15, 2010 lumbar x-ray (ordered by Dr. Sisson), which indicated degenerative changes in the lumbar spine, moderate disc space narrowing with large anterolateral spurring at L1-2, large anterolateral spurring at T12-L1 without significant disc space narrowing, and mild anterolateral spurring without disc space narrowing at L3-4 and L2-3.  AR 15, 373.  The ALJ noted that Alshoubaki's doctors placed no work restrictions on her before or after the 2010 lumbar x-ray.[4] AR 15, 42.  However, Dr. Sisson's Ability To Do Work-Related Activities (Physical) assessment is dated March 1, 2010, two weeks later.  Given that the failure of a treating physician to impose work restrictions was a reason the ALJ gave for rejecting Dr. Sisson's limitations, this court cannot assume that the ALJ's mistake in not recognizing Dr. Sisson as a treating physician at the Baseline Medical  Clinic was harmless.

Accordingly, this matter must be remanded for evaluation of Dr. Sisson's limitations.

### D.    Step Five of the Sequential Analysis

Alshoubaki contends that the three jobs identified by the VE – furniture rental consultant, mail clerk and sewing machine operator – are inconsistent with her limitations.

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits.  If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits.  *Id.*

---

[4]  The remaining treatment records from 2000-06 are of limited relevance. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2007); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

1   "There are two ways for the Commissioner to meet the burden of showing

2   that there is other work in 'significant numbers' in the national economy that

3   claimant can do:  (1) by the testimony of a vocational expert, or (2) by reference

4   to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *Id.*

5   "[A]n ALJ may [not] rely on a vocational expert's testimony regarding the

6   requirements of a particular job without first inquiring whether the testimony

7   conflicts with the [DOT]."[5]  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir.

8   2007); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th

9   Cir. 2009).  Social Security Ruling ("SSR") 00-4p requires the ALJ to "first

10  determine whether a conflict exists" between the DOT and the vocational expert's

11  testimony, and "then determine whether the [VE's] explanation for the conflict is

12  reasonable and whether a basis exists for relying on the expert rather than the

13  [DOT]."[6]  *Massachi*, 486 F.3d at 1153.

14  In evaluating the VE's explanation for the conflict, "an ALJ may rely on

15  expert testimony which contradicts the DOT, but only insofar as the record

16  contains persuasive evidence to support the deviation."  *Johnson*, 60 F.3d at

17  1435.  The ALJ's explanation is satisfactory if the ALJ's factual findings support a

18  deviation from the DOT and "persuasive testimony of available job categories"

19  matches "the specific requirements of a designated occupation with the specific

20  abilities and limitations of the claimant."  *Id.* at 1435.  Remand may not be

21  necessary if the procedural error is harmless, *i.e.*, when there is no conflict or if

22  the VE provided sufficient support for her conclusion to justify any potential

23  conflicts.  *Massachi*, 486 F.3d at 1154 n.19.

24  _____

25  [5]  The DOT raises a rebuttable presumption as to job classification.
    *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

26  [6]  Social Security rulings do not have the force of law.  Nevertheless, they
27  "constitute Social Security Administration interpretations of the statute it
    administers and of its own regulations," and are given deference "unless they are
28  plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
    F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

1
2
3
4
5
6
7
8
9

Under the DOT, the General Educational Development ("GED") Scale measures "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  DOT, Appendix C, Section III, 1991 WL 688702 (1991).  The GED Scale is composed of three divisions:  Reasoning Development, Mathematical Development, and Language Development.  *Id.* Reasoning Development Level 3 requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  *Id.*

10
11
12
13
14

The ALJ's RFC determination limits Alshoubaki to "simple routine repetitive tasks."  AR 13.  Alshoubaki argues that the jobs of furniture rental consultant and mail clerk would require her to do more than simple, repetitive tasks because they require Reasoning Level 3 skills.  JS 19-22; *see* DOT 295.357-018, DOT 209.687-026.

15
16
17
18
19
20
21
22
23
24

The court has not located a published decision by the Ninth Circuit on the issue of whether someone limited to simple, repetitive work can perform jobs requiring Level 3 reasoning.[7]  Some district courts in this circuit have generally held that a limitation to simple repetitive tasks is inconsistent with jobs requiring Level 3 reasoning.  *See, e.g., Espinoza v. Astrue,* 2013 WL 327889, at *3 (C.D. Cal. Jan. 29, 2013); *Grimes v. Astrue*, 2011 WL 164537, at *4 (C.D. Cal. Jan. 18, 2011); *Carney v. Astrue*, 2010 WL 5060488, at *5 (C.D. Cal. Dec. 6, 2010); *Etter v. Astrue*, 2010 WL 4314415, at *3 (C.D. Cal. Oct. 22, 2010); *Bagshaw v. Astrue*, 2010 WL 256544, at *5 (C.D. Cal. Jan. 20, 2010); *Pak v. Astrue*, 2009 WL 2151361, at *7 (C.D. Cal. Jul. 14, 2009); *Tudino v. Barnhart*, 2008 WL 4161443,

25
26
27
28

[7]  There is a split among the circuit courts on whether a limitation to simple, repetitive work is compatible with the performance of jobs requiring Level 3 reasoning.  *Compare Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) *with Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

9

1    at *11 (S.D. Cal. Sept. 5, 2008).  Other district courts in this circuit have held,

2    however, that simple repetitive tasks are not necessarily inconsistent with Level 3

3    reasoning.  *See, e.g., Dahl v. Astrue*, 2011 WL 2837660, *1 (C.D. Cal. July 18,

4    2011) (looking to the record to determine whether a claimant can perform the

5    type of work identified by the vocational expert); *Wentz v. Astrue*, 2009 WL

6    3734104, at *14 (D. Or. Nov. 4, 2009) (same).  The Commissioner argues that

7    the GED describes the educational level expected for given jobs and "is not

8    intended as a job description or requirement, or as reflecting the particular mental

9    demands of the jobs listed in the DOT."  JS 27.

10        It is unnecessary to resolve this issue because Alshoubaki can perform the

11   sewing machine operator job identified in the ALJ's decision.  Alshoubaki argues

12   that the job would require her to be exposed to hazards such as dangerous

13   moving machinery, which conflicts with the ALJ's RFC determination.  JS 23.

14   She contends that as a sewing machine operator, she would be exposed to

15   dangerous moving machinery because she could get her fingers or hand stuck or

16   caught in the machine.  JS 24.  The Commissioner argues that while the sewing

17   machine operator job "necessarily involves operating a machine, the vocational

18   expert reasonably determined that the machinery involved is not 'dangerous.'" JS

19   28-29; AR 60-61.

20        The DOT describes the job of sewing machine operator as follows:

21        Tends machine that automatically stitches designs to decorate

22        mattress covers and to hold padding in place:  Places spools of

23        thread on spindles and draws ends through guides, tensions, and

24        needle eyes.  Inserts bobbin in shuttle and draws thread through

25        slot in shuttle wall.  Clamps covering material and padding in frame

26        and places frame in rack under sewing head of machine.  Bolts pilot

27        pattern plate on platform beneath frame, using wrench.  Places pilot

28        or guide bar extending from frame in guide channels of pilot pattern

10

1    and starts machine.  May move pilot or guide bar by hand.  May
2    attach framed cover to pulleys that draw it away from machine as
3    cover is stitched, and guide cover under presser foot by hand to
4    stitch design.

5   DICOT 689.685-118.  The DOT further provides that exposure to moving
6   mechanical parts in the job is "not present" in the sewing machine operator job.
7   *Id.*  The VE's testimony regarding the sewing machine operator does not conflict
8   with the DOT.

9          **E.    Obesity**

10         Alshoubaki contends that the ALJ did not properly determine the effect of
11   her obesity on her other impairments.[8]

12         The ALJ determined that her obesity was a severe impairment.  AR 12.
13   Alshoubaki argues that her "obesity is compounded by her diabetes, her carpal
14   tunnel syndrome, her diabetic neuropathy, as well as other impairments not listed
15   as severe by the ALJ, including chronic kidney disease, hypertension, and back
16   pain."  JS 34.  However, Alshoubaki has not pointed to any evidence in the record
17   of any functional limitations as a result of her obesity that the ALJ failed to
18   consider.  *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005).  The court in
19   *Burch* noted an ALJ "'will not make assumptions about the severity or functional
20   effects of obesity combined with other impairments.  Obesity in combination with
21   another impairment may or may not increase the severity or functional limitations
22   of the other impairment.'"  *Id.* at 682.  (citation omitted).  Accordingly, an ALJ
23   evaluates a case "'based on the information in the case record.'"  *Id.* (citation and
24   emphasis omitted).

25

26

_____

27         [8]  Obesity can be considered in combination with other impairments to
28   determine whether, when viewed in the aggregate, the multiple impairments are
     equivalent to a listed impairment.  *See* SSR 02–1p (2002).

1    Moreover, at Step Three, an ALJ is not required to discuss the combined
2    effects of a claimant's impairments or compare them to any listing in an
3    equivalency determination unless the claimant presents evidence in an effort to
4    establish equivalence.  *Id.* at 683.  As in *Burch*, Alshoubaki was represented by
5    counsel at the hearing.  AR 25.  Alshoubaki did not make any effort to argue
6    equivalence to a listed impairment.  The medical record do not indicate any
7    limitations due to obesity, alone or in combination with other impairments.[9]  The
8    ALJ did not err.

9                                          **IV.**

10                                       **ORDER**

11    IT IS HEREBY ORDERED that the decision of the Commissioner is
12   reversed and remanded for consideration of Dr. Sisson's opinions.

13   IT IS FURTHER ORDERED that the Clerk serve copies of this Order and
14   the Judgment herein on all parties or their counsel.

15

16   DATED: May 2, 2013

17                                          ALICIA G. ROSENBERG
                                            United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27   _____
28        [9]  Dr. Sisson did not mention obesity as a medical finding supporting the
     limitations in his physical assessment.  AR 428-30.

                                            12